† EDWARD N. ROTH v. STATE OF OHIO

OHIO GAME LAWS ARE CONSTITUTIONAL.

> The Ohio game laws making it unlawful to sell quail in this state during a prohibited period are constitutional and applicable to game killed in another state and brought here for sale or use.

Error to the Court of Common Pleas of Hamilton county.

SWING, J.

This is an action in error to reverse the judgment of the court of common pleas, affirming a judgment of a justice of the peace in and for Cincinnati township. On October 21, A. D. 1891, a complaint was filed before said justice, charging that said E. N. Roth did unlawfully, knowingly and wilfully sell a certain quail contrary to the statutes in such case made and provided. A demurrer to said complaint was overruled, and the case was tried on the following agreed statement of facts, viz.:

> The defendant is the proprietor of the St. Nicholas Hotel, in the city of Cincinnati, O., and a citizen of said city. On October 21, 1891, he had in his possession for the purpose of sale, not in the original packages, to his guests in said hotel, in the city of Cincinnati, in the state of Ohio, six (6) quail, which quail were by him purchased in the state of New York and shipped to him for the purpose aforesaid. That he did sell one of said quail, not

---

†This judgment was affirmed by the supreme court; see opinion, 51 O. S. 209.

in the orginal package, to Ora Minor, for the sum of seventy cents, to be eaten by him as a guest in said hotel on the said October 21, 1891, in the city of Cincinnati, state of Ohio. Said quail was killed in the state of New York at a time when the killing and selling thereof was not prohibited by law.

The justice found the defendant guilty, and imposed a fine of twenty-five dollars.

Two reasons are urged by plaintiff in error why this finding and judgment are erroneous. 1st. That by the laws of this state it is not unlawful for one to have in possession quail or game lawfully killed in another state; and 2nd, if it is unlawful, the law is unconstitutional.

First. Is it unlawful?

Section 6961, Rev. Stat., provides for the unlawful killing, catching, pursuing or injuring quail, except from the 10th day of November until the 5th day of December, inclusive, or catching or snaring quail at any time, or disturbing the nests of quail at any time; and it further provides that "no person shall buy, sell or offer for sale, or convey or ship beyond the boundaries of this state any game killed or captured contrary to the provisions of this chapter."

This section has been very often amended, and in every instance the object of the legislature is apparent in trying to make the law a more perfect protection for game. The law first provides against the catching, killing, pursuing and injuring as to certain times of the year. It then seeks to protect the eggs or nests of the game birds. It then provides for the kind of game that may be killed, and it further provides as to having in possession certain implements used for the destruction of game on Sunday. Then follows the provision above quoted as to buying, selling, etc. The provisions of this section undoubtedly apply only to game killed in Ohio.

But sec. 6964 provides as follows:

"Whoever purchases, sells, exposes for sale or has in his possession any of the birds, game, or animals mentioned in sec. 6961 and 6963, during the time the killing thereof is made penal, shall be fined * * * provided that the provisions of this act shall not be construed as applicable to any common carrier into whose possession any of the birds, game or animals herein mentioned shall come in the regular course of their business for transportation whilst they are in transit through this state from any place without this state, where the killing of said birds, game or animals shall be lawful."

We think that an examination of the different amendments made to these laws will aid in the construction of these sections. It is contended that the provisions of section 6964 can and do only apply to game killed in Ohio, and which is prohibited by sec. 6961.

Previous to 1888 (April 16) sec. 6961 contained no provision, as it now does, making it unlawful to buy, sell or offer to sell or convey or ship beyond the boundaries of this state, any of the game killed or captured contrary to the provisions of said section, but sec. 6964 was then as it is now. This latter section was passed April 6, 1882 (79 O. L., 74), previous to which there was no provision exempting common carriers transporting game lawfully killed in another state through the state. The first act passed making it unlawful to have any of the game protected in his possession was passed April 19, 1881, (78 O. L., page 107).

Previous to that it was unlawful to purchase or expose for sale any of the game mentioned, and the exposure for sale was prima facie evidence that the same was unlawfully killed within the state. See Rev. Stat., Williams, Ed., 1883, sec. 6964.

It will be noted that section 6961, as it now stands, while it provides that it shall be unlawful to buy, sell or offer to sell, contains no provision in regard to having in possession any of the game mentioned, while sec. 6964 provides that whoever purchases, sells, exposes for sale or has in his possession any of the game, etc. Evidently from the language used, sec. 6964 is a broader sec. than 6961, not only in including "having in possession," but as to the nature and kind of game referred to. Section 6961 says, no person shall buy, sell, etc., any game

killed or captured contrary to this section, while sec. 6964 makes it unlawful to purchase, sell or have in possession any game "mentioned" in sec. 6960, 6961 and 6963. . There would be no use in having in sec. 6964 any provision to make it unlawful to purchase, sell or expose for sale the game mentioned in sec. 6961, which is the Ohio game, for that is already provided for in sec. 6961. Neither does it seem reasonable that after sec. 6961 was enacted as it is now, that there would be any reason for a separate sec. as 6964 now is if it was intended to cover merely having in possession the game mentioned in sec. 6961, for that would certainly have been added on to the provision of that section which makes it unlawful to buy, sell, etc. But this is not all. Prior to April 19, 1881, it is clear that these provisions in regard to buying or selling game, etc., only applied to Ohio game, as it provided the having possession should be *prima facie* evidence that the game was killed in the state. Then, on April 6, 1882, came the amendment making it unlawful to have in possession, and then, on April 16, 1888, adding on to sec. 6961 the provision that it was unlawful to buy, sell, etc., the game killed contrary to that section. But if the law as it now stands can only apply to game killed in Ohio contrary to law, what use would there be of exempting common carriers who were transporting game lawfully killed in any other state through this state? The common carrier is not exempted from penalty for selling or exposing for sale game in this state, lawfully killed in another state. Neither is the common carrier exempted from penalty for having in its possession any game lawfully killed in another state except in the course of transportation. The only person exempt from having game in possession, whether killed in this state contrary to law or killed in another state according to law, according to the plain reading and meaning of this section, is a common carrier who is regularly in the course of business transporting said game through the state, and this provision was evidently made so as not to conflict with the laws of the United States.

We are therefore clearly of the opinion that the law as it stands prohibits the selling, buying or having in possession any of the game mentioned in the secs. 6960, 6961 and 6963, whether killed in Ohio or any other state, and whether lawfully or unlawfully killed in said other state.

Is such a law constitutional?

In our judgment, such a law is within the power of the legislature. The case was very fully and ably argued by counsel on either side, and all reported cases, both English and American, have been cited, and we have gone over these cases. But we do not think it necessary to review these authorities in detail, but will content ourselves with saying that we think our view of the case is in accordance with the weight of the authorities. Our idea of the law is this: The protection of game is a matter of the very greatest public concern, and pertains to the public welfare, and the proper test is, is the law a reasonable one, adapted to the remedy? Any law which afforded any protection to game must be very strict and far reaching from its very nature. Deer, wild turkeys, wild ducks, quail and all such game are not killed in the highways, villages or crowded streets of our cities; but, on the contrary, the game is killed in a secluded place, and generally none other than the killer is a witness to the killing.

The primary object of the law is to prevent the killing, but in order to do this it must go further. No one is permitted admittedly to buy, sell, offer for sale or have in possession any Ohio game killed contrary to law. Now, there is no reason why it should be unlawful to buy, sell, or have in possession any of this game after it has been killed except to prevent its being killed. The game is wholesome, and if the one killing the game could always be caught, there would be no reason to prevent the selling of it, but by preventing its sale and possession the game is prevented from being killed. For the same reason our legislature has made it unlawful to have in possession or buy or sell game killed in this or any other state. The object is to protect the game of our own state, without reference to

the game of other states. If it was permitted to bring game from another state into this state, it would be almost impossible to prevent the destruction of our own game during such periods. How would the officers of the law know whether the game was killed in Ohio or any other state? The game would have no ear marks, and all the protection afforded by that section would be lost.

It is evident from the care which our legislature has given this matter that they have endeavored to very carefully guard against the love of gain of the market hunter on the one hand, and the appetite of the epicure and gourmand on the other, in the interest of the whole people, not only for the present time, but for the future. Such laws should be upheld by the courts, unless plainly prohibited by the constitution, and we are unable to find any constitutional inhibition.

The judgment will therefore be affirmed.

Wm. K. Maxwell, and Ramsey, Maxwell & Ramsey for Mr. Roth.

John P. Murphy, for the State.